STATE of Wisconsin EX REL., JOURNAL/SEN-
TINEL, INC., a Wisconsin corporation, and Bruce
Gill, Plaintiffs-Appellants,

v.

Ronald E. PLEVA, James A. McCann, Lyle A. Stern,
William R. Drew, Frederick Stratton, James L.
Roberts, G. Frederick Kasten, Jr., and Milwaukee
World Festival, Inc., Defendants-Respondents-
Petitioners.†

Supreme Court

*No. 88–1808. Argued April 24, 1990.—Decided June 20, 1990.*

(Also reported in 456 N.W.2d 359.)

† Motion for reconsideration denied.

For the defendant-respondent-petitioner there were briefs by *L.C. Hammond, Jr., Jeffrey O. Davis* and *Quarles & Brady,* Milwaukee and oral argument by *Mr. Hammond.*

For the plaintiffs-appellants there was a brief by *Susan J. Marguet, Michael J. Cohen* and *Meissner & Tierney, S.C.,* Milwaukee and oral argument by *Ms. Marguet.*

Amicus curiae brief was filed by *Linda M. Clifford* and *LaFollette & Sinykin,* Madison, for Wisconsin Newspaper Association.

HEFFERNAN, CHIEF JUSTICE. This is a review of a court of appeals decision which reversed the judgment of the trial court, Patrick J. Madden, Circuit Judge for Milwaukee county, dismissing plaintiffs' action for declaratory judgment. *State of Wisconsin ex rel. Journal/Sentinel, Inc., v. Pleva,* 151 Wis. 2d 608, 445 N.W.2d 689 (Ct. App. 1989). The issue presented is whether the public may bring an action to enforce a provision in a lease between the City of Milwaukee and Milwaukee World Festival, Inc. (Festival), a private non-profit corporation charged with organizing public festivals such as Summerfest, which requires all Festival meetings to be held in compliance with the Open Meetings Law. We affirm the decision of the court of appeals and hold as a matter of law—dictated by the clearly stated public policies of freedom of contract and the right of the public to have access to public meetings—that, under the facts of this case, the public has standing to bring an action for enforcement of the Open Meetings provision in the lease between the City of Milwaukee and Festival, the private sponsor of Summerfest.

The facts are these: In December 1985, the City of Milwaukee leased lakefront property to Festival, a non-profit corporation which organizes events such as Summerfest and several ethnic festivals on what is commonly known as the Summerfest grounds in Milwaukee. This property had earlier been conveyed to the City from the state by statute (ch. 151, Laws of 1929, and ch. 76, Laws of 1973). These statutes provide that the land will revert to the state if it is not used in a manner consistent with the public trust.

706

The lease contains a provision which requires Festival and its board of directors to comply with the Open Meetings Law (subch. IV, ch. 19, Stats.). The lease, signed on December 31, 1985, required Festival to amend its bylaws in a manner consistent with a letter dated December 20, 1985. The lease provides:

> FESTIVAL shall, at its 1986 annual meeting, amend its By-Laws in a manner consistent with the letter attached hereto as Exhibit "F" and shall maintain such amendments in full force and effect during the term of this Agreement.

The December 20, 1985 letter, incorporated by reference into the lease, was written by John W. Schmitt, president and chairman of Festival, to John Kalwitz, then-president of the City's Common Council. It provides for the restructuring of the Board of Directors of Festival to include seven public officials, including the Mayor, the Commissioner of City Development, the Commissioner of Public Works, President of the Common Council, an alderman, the City Comptroller, and the County Executive. In addition, the letter states that the Board will modify its bylaws to provide "that all of the meetings of the Board and its committees will be conducted openly consistent with the dictates of the State of Wisconsin open meeting law." At the 1986 annual meeting, Festival amended its bylaws to provide:

> The Board and all meetings of committees will be held by complying with the procedures specified in the public meeting law of the State of Wisconsin, currently Wis. Stats. Section 19.81. Public notice of open meetings shall be given pursuant to Wis. Stats. Section 19.84.

Bruce Gill, a reporter for the Milwaukee Sentinel, sought to cover a meeting held on December 7, 1987 by

707

the Festival finance committee. The committee voted to close the meeting, claiming that it was discussing its operating budget and in conformity with sec. 19.85(1)(e), Stats., was allowed to do so behind closed doors.

Gill and the Journal/Sentinel (Newspaper) brought an action for declaratory relief under sec. 806.04, Stats., asserting that Festival is a governmental body under sec. 19.82(1) of the Open Meetings Law; and Newspaper, as a member of the public, has standing as a relator under sec. 19.97(4), Stats., to bring an action for open meetings violations. In the alternative, they claim that Newspaper is a third party beneficiary of the contract between the City and Festival, and has standing to bring an action for a breach of the covenant requiring compliance with the Open Meetings Law.

Festival filed a motion to dismiss, asserting that it was not a governmental body subject to the Open Meetings Law, and that the public was not a third-party beneficiary of the lease between the City and Festival. On these grounds, Festival asked that the plaintiffs' complaint be dismissed for failure to state a claim upon which relief could be granted and because plaintiffs lacked standing to sue for breach of a contract to which they were not a party.

The circuit judge dismissed the plaintiffs' complaint, concluding that Festival was not a governmental body, subject to the Open Meetings Law. In addition, he held that, because the parties to the lease did not expressly include the enforcement provisions of the Open Meetings Law, secs. 19.96 and 19.97, Stats., it was clear that they did not intend to provide an actionable right in the public to enforce the Open Meetings provision. Moreover, he stated that a municipality could not by contract make statutory punitive sanctions applicable to a contracting party, absent specific statutory author-

ity. Finally, the circuit judge concluded that, because the basic purpose of the lease between the City and Festival was to provide festivals, and the Open Meetings provision was incidental to that purpose, the contracting parties did not intend to make the public a third-party beneficiary of the lease.

Plaintiffs appealed the circuit court's decision. The court of appeals reversed the circuit court's judgment. *State of Wisconsin ex rel. Journal/Sentinel, Inc., v. Pleva,* 151 Wis. 2d 608, 445 N.W.2d 689 (Ct. App. 1989). The court of appeals held that the lease was entered into directly and primarily for the benefit of a third party—the public—and, therefore, the public has standing to sue for breach of the contract. Defendants petitioned this court for review of the court of appeals decision. For the reasons set forth in this opinion, we affirm the court of appeals decision.

Generally, a contract between two persons is not binding on persons who are not in privity to it. *Prinsen v. Russos,* 194 Wis. 142, 145, 215 N.W. 905 (1927); and *Undelhofen v. John Hancock Mut. Life Ins. Co.,* 128 Wis. 2d 216, 220, 381 N.W.2d 579 (Ct. App. 1985). Also, as a general rule, parties to a contract and third-party beneficiaries of a contract are the only persons who can sue under a contract. *Abramowski v. Wm. Kilps Sons Realty, Inc.,* 80 Wis. 2d 468, 472, 259 N.W.2d 306 (1977); and *Lamb v. Manning,* 145 Wis. 2d 619, 626, 427 N.W.2d 437 (Ct. App. 1988). Defendants assert that plaintiffs cannot sue for enforcement of the Open Meetings provision in the lease unless they establish that they have standing to sue as a third-party beneficiary of the contract. We conclude that it is unnecessary for us to consider whether the public was intended to be a third-party beneficiary of this contract. Because the parties

709

expressly incorporated the Open Meetings Law into their contract, we conclude that it is the clear intent of the parties that the public be allowed to seek declaratory relief for breach of an Open Meetings provision in the contract between the City of Milwaukee and Festival. Where the contract expressly incorporates the entire Open Meetings Law by reference, we honor the parties freedom to contract, and we need not address whether Festival is a governmental body under the Open Meetings Law or whether the public is a third-party beneficiary of the contract.

We emphasize that the circumstances of this case are unique. It is not often that parties to a contract expressly incorporate a fundamentally public-oriented statutory provision such as the Open Meetings Law into a contract. Moreover, it is a rare contract that, as here, can be breached by both parties at the same time, leaving no one but the public to enforce it. For these reasons, this court construes the clear incorporation of the Open Meetings Law into this contract as express intent by the parties to allow the public[1] to enforce compliance with the provisions of the Open Meetings Law by the parties to the contract.

Wisconsin courts have always recognized the importance of protecting parties' freedom to contract. *Watts v. Watts,* 137 Wis. 2d 506, 521, 405 N.W.2d 305 (1987). "The courts protect each party to a contract by ensuring that the promises will be performed." *Merten v. Nathan,* 108 Wis. 2d 205, 211, 321 N.W.2d 173 (1982). Accord-

---

[1]This court recognizes that, "[a]lthough the media does not have a privileged position, if the media is denied access to the affairs of government, the public for all practical purposes is denied access as well." *State ex rel. Newspapers, Inc., v. Showers,* 135 Wis. 2d 77, 81, 398 N.W.2d 154 (1987).

ingly, the cornerstone of contract construction is to ascertain the true intentions of the parties as expressed by the contractual language. This court has said that the purpose of judicial construction is to determine what the parties contracted to do as evidenced by the language they saw fit to use. *Koenings v. Joseph Schlitz Brewing Co.* , 126 Wis. 2d 349, 366, 377 N.W.2d 593 (1985), citing *Miller v. Miller,* 67 Wis. 2d 435, 442, 227 N.W.2d 626 (1975). In addition, an agreement should be given a reasonable meaning so that no part of the contract is surplusage. *Id.;* and *Hastreiter v. Karau Buildings, Inc.,* 57 Wis. 2d 746, 748-49, 205 N.W.2d 162 (1973).

Festival claims that only the parties to the contract are entitled to enforce the Open Meetings provision in this lease. Festival's interpretation of the contract, however, would render the Open Meetings provision of the contract completely meaningless. Several elected City officials sit on Festival's board and, in fact, two members of the Finance Committee who voted to close the meetings to the public were city officials.[2] We conclude that the parties to the contract must have anticipated this conflict of interest and, for that reason, incorporated the provisions of the Open Meetings Law which expressly provide for enforcement by the public.

■■

This court will protect parties' freedom to contract as long as the terms of the contract are not contrary to public policy. *Griffith v. Harris,* 17 Wis. 2d 255, 259, 116 N.W.2d 133 (1962); *Continental Ins. Co. v. Daily Express, Inc.,* 68 Wis. 2d 581, 229 N.W.2d 617 (1975). In this case, the Open Meetings provision in the lease is not

---

[2]We do not intend to give any opinion whether there has been a violation of the Open Meetings Law as adopted in the contract in this case, as the only issue before us is whether the public has standing to bring this action.

contrary to public policy. To the contrary, incorporation of the Open Meetings Law furthers the fundamental right of the public to be fully informed regarding the conduct of government business. *See State ex rel. Newspapers, Inc., v. Showers,* 135 Wis. 2d 77, 80, 398 N.W.2d 154 (1987). We conclude that both of these policy concerns—freedom of contract and guaranteeing public access to meetings—are given due meaning by construing the contract to provide the public with the right to enforce the Open Meetings provision on behalf of the parties to the contract. That is, we give full meaning to the intent of the parties, as ascertained from the express language of the contract, which is to insure compliance with the provisions of the Open Meetings Law. Without the public as an enforcer, this provision in the lease would be meaningless surplusage.

Festival argues that the parties intended only to incorporate the "procedures" of the Open Meetings Law, and not the "enforcement" provisions of the statutes. They note that Festival's bylaws, as amended, refer only to secs. 19.81 and 19.84 of the Open Meetings Law. First of all, sec. 19.81 declares the policies furthered by the entire subchapter referred to as the Open Meetings Law, and states at sec. 19.81(4) that the subchapter shall be liberally construed to achieve the purposes set forth by the statute. It is sec. 19.83, Stats., which specifically refers to the "procedure" of opening meetings to the public. Second, if the parties intended to incorporate only secs. 19.81 and 19.84 (requirements for giving notice), then the exemptions to the Open Meetings Law, which allow closed meetings in some circumstances, would be unavailable to the parties to this contract. Ironically, Festival relies on sec. 19.85 for its exemption from the general requirement that they hold their meetings open to the public. The only reasonable interpreta-

tion of this contract, thus, is to conclude that the parties intended to incorporate the entire Open Meetings provision in their lease, including the limited rights of the public to enforce compliance with its provisions.

We note that the enforcement provisions of the Open Meetings Law are indeed limited. While a court may award costs and attorneys fees, any forfeitures recovered must be paid to the state. In this case, the relators seek not a forfeiture, but only a declaratory judgment that defendants violated secs. 19.81 and 19.83, Stats., and costs and attorneys fees pursuant to sec. 19.97(4), Stats.

For the reasons set forth in this opinion the decision of the court of appeals is affirmed.

*By the Court.*—Decision affirmed.