136 Wis.2d 281 (1987)
401 N.W.2d 585
STATE of Wisconsin, Plaintiff-Respondent and Cross-Appellant-Petitioner,
v.
LABOR & INDUSTRY REVIEW COMMISSION, Defendant and Cross-Respondent,
Olivia McKENZIE, individually and as Administratrix of the Estate of James McKenzie, Defendant and Cross-Respondent,
WEHR CORPORATION, a/k/a Wehr Steel Co., and Employers Insurance of Wausau, Defendants-Appellants.
No. 84-1656.
Supreme Court of Wisconsin.
Argued September 30, 1986.
Decided March 9, 1987.
*283 For the plaintiff-respondent and cross-appellant-petitioner the cause was argued by Bruce A. Olsen, assistant attorney general, with whom on the briefs was Bronson C. La Follette, attorney general.
For the defendant and cross-respondent, Olivia McKenzie, there was a brief by Anthony W. Welhouse and Gillick, Murphy, Gillick & Wicht, Appleton, and oral argument by Mr. Welhouse.
For the defendant and cross-respondent, Labor and Industry Review Commission, there was a brief (in court of appeals) and oral argument by Floyd F. Tefft, Madison.
HEFFERNAN, CHIEF JUSTICE.
This is a review of an unpublished decision dated September 12, 1985, of the court of appeals which reversed in part and affirmed in part an order of the circuit court for Dane county, P. Charles Jones, Judge, which affirmed in part and reversed in part an order of the Labor and Industry Review Commission. On review, we are concerned with but one of the questions involved in the original proceeding: Whether the surviving spouse of a deceased employee who was entitled to apply for total disability compensation but failed to do so may bring a claim for the deceased employee's permanent total disability benefits.
*284 The commission concluded that a deceased employee's "estate or dependents" may bring such a claim. On review in the circuit court and on appeal to the court of appeals, the order of the commission was affirmed. We reverse the decision of the court of appeals and hold that the surviving spouse or other dependent of a totally and permanently disabled worker whose death occurs other than as a result of the compensable injury may not claim disability compensation payments which the disabled worker failed to claim during his lifetime.
The facts are undisputed. James McKenzie, during the course of his employment as a welder for the Wehr Corporation, developed shortness of breath, asthma, and bronchitis, which was diagnosed as pneumoconiosis. He retired from his work in 1971. He was totally disabled from that time. His total disability was the result of his work and was a compensable injury. Despite that fact, James McKenzie never filed a claim for worker's compensation benefits. At the time of his retirement, the applicable statute of limitations, sec. 102.17(4), Stats. (1971), was six years. His right to claim benefits from his employer and its insurer expired in 1977.
In 1975, however, the Wisconsin legislature enacted sec. 102.66, Stats., Laws of 1975, ch. 147. That statute provides:
"102.66 Payment of certain barred claims. (1) In the event that there is an otherwise meritorious claim for occupational disease barred solely by the statute of limitations under s. 102.17(4), the department may in lieu of worker's compensation benefits direct payment from the work injury supplemental benefit fund under s. 102.65 such *285 compensation and such medical expenses as would otherwise be due ...."
Thus, even after the expiration of the limitations period in sec. 102.17(4), Stats., James McKenzie could have filed a claim against the supplemental fund under sec. 102.66. Although he did not do so, it is agreed on this review that his claim would have been "meritorious," for "occupational disease," and "barred solely by the statute of limitations."
Why James McKenzie failed to claim compensation against his employer, or subsequently against the state supplemental fund, is not revealed in these proceedings. He died in 1979 from causes unrelated to his occupational injury.
Shortly after his death, his widow, Olivia McKenzie, filed a claim for worker's compensation benefits against the Wehr Corporation and its insurer and against the state supplemental fund. The circuit court concluded that because a claim for death benefits did not accrue until a worker's death, the claim brought in 1979 was within the then six-year period of limitations and, therefore, the Wehr Corporation and its insurer were required to make payment. The commission had held that the six-year statute of limitations commenced running on the date James McKenzie was last employed and, therefore, the state supplemental fund was responsible for payment of Olivia McKenzie's benefits. After the court of appeals affirmed the circuit court's decision in this respect, the liability of the Wehr Corporation was conceded and is not an issue on this review.
Thus, only the question of Olivia McKenzie's claim to total disability benefits from the date of *286 James McKenzie's retirement to the date of his death is at issue.[1]
Whether a surviving spouse may file a claim for a deceased employee's unfiled-for total permanent disability benefits under the Wisconsin Workers Compensation Act, ch. 102, Stats., is to be resolved by the process of statutory construction, and is therefore a question of law. Sacotte v. Ideal-Werk Krug & Priester, 121 Wis. 2d 401, 405, 359 N.W.2d 393 (1984). We need not defer to the decision of the circuit court, to the decision of the court of appeals, nor to the decision of the commission.
We start with the basic proposition that worker's compensation benefits derive solely from legislative enactments. Those enactments create new rights; only if rights and benefits are specifically conferred by the worker's compensation act can it be said that they exist. See, Mulder v. Acme-Cleveland Corp., 95 Wis. 2d 173, 290 N.W.2d 276 (1980). Mulder makes it clear *287 that the quasi-contractual status of the worker in relation to the employer is the result of a legislatively imposed social compact by which an employee acquires rights not recognized by the common law and the employer and its insurer are subject to only limited or scheduled liability. Only rights expressly conferred and liabilities expressly imposed are contemplated by the legislative intent of the compensation act.
The statein this case, the office of the attorney general, which represents the supplemental fund following the above interpretation of the compensation act, asserts that, in the absence of a specific provision in the act granting Olivia McKenzie standing to claim her husband's unfiled-for disability benefits, she can claim no right to do so.[2]
No statute specifically confers upon a surviving spouse the right to make claim for total disability benefits not claimed by the deceased worker, nor does any section of the worker's compensation act imply that a spouse can assert such right not asserted by the deceased. That an examination of the compensation *288 act reveals no such statutory implication is hardly surprising, for we have frequently stated that the fundamental purpose of the worker's compensation act is to compensate the injured employee. Duvick v. Industrial Comm., 22 Wis. 2d 155, 125 N.W.2d 356 (1963); Independence Indemnity Co. v. Industrial Comm., 209 Wis. 109, 224 N.W. 566 (1932). The act is intended to compensate the injured employee for a loss of wages. It is not a state-managed health and accident scheme, nor is it a life insurance program. Only when the act specifically confers such benefits or singles out favored relatives or dependents as the recipients of benefits can it be said that a purpose beyond compensation of the worker is legislatively intended by the act. Worker's compensation acts, while to be liberally construed to effectuate their stated purpose, i.e., to expand within reason what is "covered" service (Green Bay Packaging, Inc. v. IHLR Dept., 72 Wis. 2d 26, 37, 240 N.W.2d 422 (1976)), are not to be interpreted in a manner as to transform their intent or to change their meaning. Frisbie v. ILHR Dept., 45 Wis. 2d 80, 87, 172 N.W.2d 346 (1969).
The compensation act is devoid of any suggestion that a dependent can, after the death of the worker, claim benefits that the worker chose not to claim. That does not mean that a dependent such as Olivia McKenzie has no post-mortem rights under the act. The compensation act specifically provides death benefits when death results from the injury and the deceased leaves a person dependent upon him for support. The act also provides for a death benefit when the injured employee dies other than as the proximate result of the injury. The exact situation that occurred in this case is contemplated by sec. 102.47(1), Stats. (1979):

*289 "102.47 Death benefit, continued. If death occurs to an injured employe other than as a proximate result of the injury, before disability indemnity ceases, death benefit and burial expense allowance shall be as follows:
"(1) Where the injury proximately causes permanent total disability, they shall be the same as if the injury had caused death, except that the burial expense allowance shall be included in the items subject to the limitation stated in section 102.46. The amount available shall be applied toward burial expense before any is applied toward death benefit."
Accordingly, there is a specific provision of the act that applies in the instant case, where there is an admitted total disability. The amount payable to the surviving spouse is identical to that which would have been payable had the injury caused death. It should be noted that, had any disability been paid or been due at the time of death, such payments would contribute to the statutory limitation on the death benefit. Thus, in the instant case, where no disability payments were claimed or made, the death benefit is undiminished.
While the total disability benefits that might have been claimed under the act during James McKenzie's lifetime plus the diminished death benefits under sec. 102.47 would probably exceed the gross amount of the death benefits alone, it is important, in construing the statute, to recognize that the legislature intended that there be some diminution in the death benefit where compensation payments had been made during the worker's lifetime. The legislature thus made specific provision for the eventuality that inured in the present case. The dependent, having a right to the *290 death benefit, takes it without any limitation by reason of any lifetime payments for disability.
Section 102.47(1), Stats. (1979), represents the legislature's determination of what are appropriate benefits for the spouse of a totally and permanently disabled worker who dies from causes unrelated to the injury.
Not only does no statute authorize Olivia McKenzie's post-mortem claim for her husband's total disability, but sec. 102.51(5), Stats. (1979), provides that:
"No dependent of an injured employe shall be deemed a party in interest to any proceeding by [the employe] for the enforcement of [the employe's] claim for compensation, nor as respects the compromise thereof by such employe."
The meaning of the statute is that Olivia McKenzie had no interest in her husband's claim for disability benefits, nor in any compromise he might have made had he claimed the benefits or entered into a settlement during his lifetime. It follows that if a spouse is not a party in interest to an employee's claim or compromise, the spouse should not have an interest in a claim after the employee's death for disability benefits not claimed by the employee during his lifetime. This is made evident because the legislature showed its intent to accommodate spouses or other dependents by specified death benefits. It did authorize a tardy claim for disability benefits that were designed to benefit the injured worker, not his heirs or dependents. Additionally, this court, in Pigeon v. IHLR Dept., 109 Wis. 2d 519, 326 N.W.2d 752 (1982), held that the injured worker could compromise, indeed extinguish, a spouse's subsequent claim for *291 death benefits. Pigeon, in its interpretation of the meaning of sec. 102.51(5), reinforces what is expressed in the worker's compensation statutes generallythat disability benefits are "employee centered" and are not designed for the benefit of dependents. Only where the statute explicitly benefits or protects spouses can it be said that the act is designed to serve such purposes. The general policy of the act is based on the general principle that only those rights that are explicitly recognized in the act are to be protected.
However, Olivia McKenzie asserts that the basic policy of the supplemental fund, which allows benefits for meritorious claims that are barred solely by the running of limitations impels permitting her recovery. Her argument is that, if James McKenzie was unable to file a claim because he was unaware of his workrelated occupational disease, it would nevertheless be in keeping with the policy of the act for her to be allowed to file the claim, because the intent of the fund is that there be no statute of limitations for occupational disease. There are two gaps in the logic of this assertion. One, there is no evidence to show that James McKenzie did not know that he had a disease that was work related, and, two, even were that true, there is no evidence of a legislative intent that one not the employee was to be benefited by the provisions of the supplemental fund. Public policy dictates that benefits be employee centered, and only dependent-centered when the legislature has expressly said so. To allow a potential claimant to rest on his claim without asserting it for a period of eight years, perhaps because of indifference or lack of need for the benefits, and then after the death of the injured worker to allow the claim by a dependent, who has *292 separately defined death benefit rights under the act and has no stated right to file a claim for the disability benefits, comports with no rational public policy.
No statute of limitations can run against the right of the injured worker in his claim against the supplemental fund for an occupational disease. However, under a reasonable view of the statute, the period of limitations is the same as the duration of the worker's life. To allow a claim by a spouse or a subsequent dependent may well extend potential liability of the fund considerably beyond the employee's lifetime. There is no provision that requires filing by the employee or his dependent within any legislatively stated period after "discovery" of the cause of the injury. The procedure urged by the claimant could lead to absurd results not at all consonant with the act's prime purpose of protecting the worker or even with the sometimes specifically stated purpose of protecting dependents. Thus, the "right" asserted by the claimant is unlikely to have been contemplated by the legislature. Certainly, that intent has not been explicitly stated in the act. Those who have proposed changes in the general standards of worker's compensation benefits have not proposed the remedy urged by the claimant here. See, for example, Locke, Adapting Workers' Compensation to the Special Problems of Occupational Disease, 9 Harvard Environmental Law Rev. 249, 268-74 (1985).
Section 102.47(1), Stats. (1979), provides for a death benefit for a dependent. It is not a procedure to recoup total disability benefits that were not timely claimed by the worker. Even under sec. 102.47(2), spouses of deceased persons who were permanently partially disabled do not recover the disability payments as such. Rather, the disability payments that *293 have been awarded but not yet paid are payable to the surviving spouse as "death benefits."
Under sec. 102.47(1), Stats. (1979), a spouse of a deceased permanently totally disabled employee is to recover an amount "the same as if the injury had caused death, except that the burial expense allowance shall be included in the items subject to the limitation" in lieu of any balance of the employee's disability benefits. In view of the basic parallel between sec. 102.47(1), where there is total disability, and sec. 102.47(2), where the disability is partial each concerning the procedure where death is not caused by the compensable injuryit would be expected, had the legislature so intended, to apply to the dependent in each case the same method of calculating death benefits. Clearly, the legislature did not do so. It is apparent that, in the case of James McKenzie, the right of a dependent to recover a death benefit was not to be measured in terms of what weekly total permanent benefit payments might have been, had a claim been timely made, but rather under the provisions of sec. 102.47(1).
It is clear to this court that the widow is entitled only to the death benefit set forth in sec. 102.47(1), Stats. (1979), and is not entitled to make a claim for benefits James McKenzie could have recovered during his lifetime. Nevertheless, the claimant contends that a contrary ruling is impelled by a case over sixty years old. Milwaukee v. Industrial Comm., 185 Wis. 307, 201 N.W. 251 (1924).
Milwaukee is, however, distinguishable on its facts. In Milwaukee, the widow of a permanently partially disabled employee sued "for compensation." The employee initially had been temporarily totally disabled, had been awarded benefits for his temporary *294 total disability, and had collected benefits for the temporary total disability until the time of his death from an unrelated cause. His widow sued for death benefits and for the unpaid balance of the employee's disability award. The industrial commission found that, had the employee lived, he would have recovered to the point of being permanently partially disabled. The widow received the balance of the temporary total disability award outstanding at the time of the employee's death. In addition, she received, as a death benefit, her husband's permanent partial disability payments.[3] Thus, Milwaukee appears to stand for two propositions, neither of which is relevant to McKenzie's case.[4] First, the spouse has an independent right to death benefits under the act. Spouses who are entitled to death benefits when a permanently partially disabled employee dies do not forfeit the benefits granted to them by the death benefits statute (i.e., the balance of permanent partial disability payments) if the deceased employee failed to file a claim for permanent partial disability benefits during his lifetime. Second, the spouse of a deceased, disabled employee is entitled to the unpaid balance of an award for temporary total disability made during the employee's lifetime.
Because we are concerned here with permanent total disability, and because Milwaukee appears to be a very narrow ruling, attempts to extrapolate from *295 Milwaukee to the present case are confusing and unhelpful. The Milwaukee opinion should be read as the court's response to an argument made in that case that the spouse was not entitled to death benefits unless the employee died from work-related injury, and that under the circumstances the death benefit was a "gift" of public funds. The statute now, of course, specifically provides for death benefits where death is not proximately related to the injury. Sections 102.47(1) and (2), Stats. (1979). Also, Milwaukee had to address the confusion that could result when an attempt to claim death benefits looked like an attempt to claim unfiled-for disability benefits, as happens in the case of a deceased, permanently partially disabled employee. The instant case concerns a different death benefits statute (sec. 102.47(1), rather than sec. 102.47(2)). Milwaukee does not address the issue of a spouse's right to initiate a claim for a deceased employee's unfiled-for disability benefits. Milwaukee is unhelpful in resolving the present case.
While various jurisdictions resolve the question herein posed in various ways, authorities in the field stress that the solution to the problem is dependent upon the particular jurisdiction's compensation statutes. See, 82 Am. Jur. 2d, Workmen's Compensation, sec. 685; 99 Corpus Juris Secundum, Workmen's Compensation, sec. 149.
Corpus Juris Secundum, sec. 151, notes that:
"Where no claim to compensation has been made by the workman in his lifetime, the right ... passes to his dependents where express provision is made therefor ...." (Emphasis supplied.)
2 Larson, Worker's Compensation Law, sec. 58.43, points out:

*296 "Under some statutes, it is possible for a widow to bring... a claim for a schedule disability which her husband had not brought while alive, and a claim for a death benefit in her own right...." (Emphasis supplied.)
We emphasize, as do the authorities quoted above, that the outcome of a controversy such as that addressed in this opinion is not to be resolved on general equitable or legal principles, but rather upon the express language, the specifically articulated intent of the Wisconsin legislature, which, when it enacted the worker's compensation law, created an entirely new right and body of law. Accordingly, we do not deem it helpful to analyze the opinions of other jurisdictions based upon different statutes.[5]
*297 Because the law of worker's compensation is statutory, public policy questions concerning its scope and fairness are for the legislature, not the courts. Jaeger Baking Co. v. Kretschmann, 96 Wis. 2d 590, 597, 292 N.W.2d 622 (1980); see, also, Harry Crow & Son, Inc. v. Industrial Comm., 18 Wis. 2d 442, 118 N.W.2d 841 (1963); Larson v. ILHR Department, 76 Wis. 2d 595, 621, 252 N.W.2d 33 (1977). If the legislature intends surviving spouses to inherit the right to an employee's disability benefits, it should so provide. In the absence of clear manifestation of such intent, this court cannot allow Olivia McKenzie's claim. We reverse the decision of the court of appeals with respect to the right of Olivia McKenzie to claim the total permanent disability benefits which James McKenzie could have claimed in his lifetime.
By the court.Decision of the court of appeals reversed.
BABLITCH, J. (dissenting.)
The majority concludes that the right to claim total permanent disability is extinguished by the death of the injured worker, and that neither the surviving spouse nor the estate may claim total permanent disability benefits which the disabled worker failed to claim in his or her lifetime. Although I agree that a dependent (such as a surviving spouse) may not bring such a claim, I *298 disagree that the right to claim total permanent disability is extinguished by the death of the injured worker. The title and right to recover compensation vests in the employee at the time of injury. This right is contractual in nature, which the employee has earned in lieu of wages, and therefore should not be forfeited at death absent explicit authority to the contrary. Because there is no such statutory authority to the contrary, I conclude that the injured employee's estate has the right to this claim. Accordingly, I would affirm the holdings of the trial court and the commission, and modify the holding of the appellate court, to the effect that the personal representative of the injured employee's estate be permitted to recover the compensation due.
My basic premise is that the statutes confer a title and right in the employee to recover compensation, including total permanent disability compensation, which vests at the time of injury. Section 102.03(4), Stats. 1971, in effect at the time of injury, stated: "The right to compensation and the amount thereof shall in all cases be determined in accordance with the provisions of law in effect as of the date of the injury." In State ex rel. Briggs & Stratton v. Noll, 100 Wis. 2d 650, 302 N.W.2d 487 (1981), this court had occasion to interpret sec. 102.03(4), and concluded that the right to compensation vests at the time of injury. "When the injuries in question occurred, this statute operated immediately to vest the right to compensation and fix the amount thereof `in accordance with the provisions of law in effect as of the date of the injury.'" Id. at 656.
Does this vested right survive death? The right to recover Worker's Compensation benefits is contractual in nature by the very terms of the Act. The majority agrees that the purpose of the Act is to *299 provide a statutorily controlled contract, implied by law, providing compensation "in lieu of wages," to account for the living expenses of the injured employee and his family. See Milwaukee v. Industrial Comm., 185 Wis. 307, 309-10, 201 N.W.2d 251 (1924); Speelmon Elevated Tank Serv. v. Industrial Comm., 2 Wis. 2d 181, 185, 85 N.W.2d 834 (1957); Pigeon v. ILHR Department, 109 Wis. 2d 519, 525, 326 N.W.2d 752 (1982). Because contractual rights survive death, P.C. Monday T. Co. v. Milwaukee Co. E. Comm., 24 Wis. 2d 107, 111, 128 N.W.2d 631 (1964); sec. 895.01, Stats. 1971, the right to total permanent disability compensation survives death.
Further support for this argument is derived from the fact that wages which are owed and due when the worker dies survive death. Section 103.39(2), Stats. 1971; cf. Estate of Riebs, 8 Wis. 2d 110, 98 N.W.2d 453 (1959). For the same reason that wages survive death, it is wholly unreasonable to insist that under our compensation act all the money due an employee "in lieu of wages" is lost upon death. McKenzie did not receive wages due to his total permanent disability. The benefit he was entitled to receive was "in lieu of wages." Had he not been disabled, and had wages been owed him at the time of his death, those wages owing, without any question, would have survived his death.
This conclusion is in accord with the general principle that workmen's compensation due, but unpaid, at the time of death becomes an asset of the employee's estate, in the absence of any provision to the contrary, and may be recovered by his personal representative. 82 Am. Jur. 2d Workmen's Compensation, sec. 686, pp. 370-71 (1976). The compensation awarded by the commission to the personal representative *300 of James McKenzie was due and unpaid in the sense those words are used in our statute and cases.
The State argues that Dowe v. Specialty Brass Co., 219 Wis. 192, 195, 262 N.W.2d 605 (1935), stands for the proposition that the injured worker's estate has no right to a claim not initiated by the worker himself prior to his death. Dowe is wholly inapplicable. Dowe involved a claim by the deceased worker's estate for unaccrued installments which had not become due, which were pursuant to a claim for partial disability compromised prior to the employee's death. In denying the executor of the estate the right to claim the unpaid installments, the Dowe court correctly noted that sec. 102.47(2), Stats., expressly provides that remaining unaccrued compensation shall be paid to dependents directly, without the necessity of a lengthy estate administration. Cf. Milwaukee v. Ind. Comm., 185 Wis. at 310. The present case involves accrued compensation for total permanent disability for which the legislature did not provide the type of legislative "short-cut" that they specifically provided for unaccrued compensation. The absence of such a legislative "short-cut" for accrued compensation simply requires that the compensation travel the ordinary course through the estate administration. Cf. 2 Larson, Workmen's Compensation Law, sec. 58.41 ("Accrued but unpaid installments are, of course, an asset of the estate ...." (Citations omitted.))
The conclusion that total permanent disability compensation survives death is further bolstered by language in Milw. v. Ind. Comm., to the effect that the death of the injured employee,
"merely cut off the possibility of further payment to him, but did not cut off or extinguish the right that he then had to compensation.

*301 "The title and right to the entire compensation ... was as much in him at the time of death as it would have been title to the funds if the award had been made and paid before his death." Milw. v. Ind. Comm., 185 Wis. at 310.
The court went on to hold that by statute, the particular award in that case could go directly to the widow. Id. Without the statute, "the fund here awarded might have properly become a part of his estate...." Id.
Finally, I emphasize that the Workmen's Compensation Act is a remedial statute. Remedial statutes are to be liberally construed to their fullest reasonable scope to carry out their humane purposes, i.e. to provide compensation in lieu of wages. As this court stated in Kiel v. Industrial Commission, 163 Wis. 441, 444-45, 185 N.W. 68 (1916):
"We may well say here, what has been, in terms, or effect, said many times before, that the Workmen's Compensation Law is a humane remedial enactment, which was placed upon our statute books to give vitality to the idea that personal injury losses incident to employee service, are as much a part of the labor cost of such service as wages paid and should, in some practicable way, be so treated. Therefore the legislative language used in the act to that end should be as liberally construed to effect the beneficent purpose intended, as it reasonably can be.... Rules of strict construction are not applicable to the law, as the results of the many cases which have come to this court amply illustrate...."
The majority concludes that because there is no express provision in the statutes for the filing of a claim for total permanent compensation after the *302 employee's death, it follows that no award can be made of compensation for the first time after that employee's death. However, in construing the Act, this court has historically gone beyond the explicit wording of the Act itself and spelled out rights and duties as reasonably implied under the statute. For instance, the majority concedes that this court has liberally interpreted sec. 102.06, Stats., to "expand within reason what is `covered' service ...," State v. LIRC, 136 Wis. 2d 281, majority opinion at page 288, with regard to the joint liability of an employer and contractors or subcontractors under the employer. See Green Bay Packaging, Inc. v. ILHR Dept., 72 Wis. 2d 26, 37, 240 N.W.2d 422 (1976).
The rule of liberally construing the Workmen's Compensation statutes is not exclusive to this example. The casebooks contain many other illustrative instances where this court has spelled out rights and duties as implied under the act but not provided for expressly. For example, the court has consistently held that "performing service growing out of and incidental to his employment," sec. 102.03(1)(c), Stats., must be liberally construed to include all services that can reasonably be said to come within it. Severson v. Industrial Comm., 221 Wis. 169, 175, 266 N.W. 235 (1936); Fels v. Industrial Comm., 269 Wis. 294, 297-98, 69 N.W.2d 225 (1955).
To provide another example, nowhere in the statute is there any provision that the recently created supplemental benefit fund, sec. 102.66, Stats., is fully retroactive. Yet in State v. ILHR Department, 101 Wis. 2d 396, 304 N.W.2d 758 (1981), this court so held. As Justice Day stated, "the legislature could have included express provisions within the statute, specifying such a limited retroactive application, if *303 that had been its intent." Id. at 405. Therefore, contrary to the position assumed by the majority, even in the absence of express authority in the Act for the personal representative to file this claim for compensation upon the employee's death, the existence of such a right is not precluded if the right is conferred by reasonable and fair implication incident to the authority expressly granted by the statute.
In conclusion, I reiterate that the legislature has not stated that an injured employee's rights to compensation terminate upon his or her death. The majority opinion writes such a requirement into the statute. The Act, as previously interpreted by this court, vests a contractual title and right to compensation at the time of injury, which the employee has earned in lieu of wages. That right should not be "extinguished" without express authority.
To refuse recovery here defeats the remedial and protective purposes the Worker's Compensation Act was designed to achieve, and hardly gives the Act the liberal construction which traditionally has been accorded it. Indeed, it is directly contrary to the cases of this court and to the statutes themselves. Accordingly, I dissent.
I am authorized to state that JUSTICE ROLAND B. DAY joins in this dissent.
NOTES
[1] During the course of oral argument, it was disclosed that the supplemental fund, unbeknownst to its present counsel, and pursuant to the commission order, honored Olivia McKenzie's claim and paid to her the permanent total disability benefits that James McKenzie would have received if he had timely filed his claim. Hence, the entire issue addressed in this opinion is arguably moot in that it cannot have a practical effect upon the instant controversy. Nevertheless, we conclude, upon the representations of both counsel, that the problem posed herein is likely to recur, that the proper resolution has long been a matter of uncertainty to the commission and to practitioners in the filed. The matter is of substantial public concern and is likely to arise again. We therefore have concluded to decide the issue on the basis of the record before us. See, State ex rel. LaCrosse Tribune v. Circuit Court, 115 Wis. 2d 220, 229, 340 N.W.2d 460 (1983).
[2] While the parties consistently refer to the question of Olivia McKenzie's right to file a claim as being one of standing, the author of this opinion doubts that the term properly describes the problem posed here. Standing typically refers to the question of whether a particular litigant is a proper party to assert a legal position. Standing carries with it the connotation that someone has a right; but, quaere, is the party before the court the appropriate one to assert the right in question. In the instant case, it appears that the right to file a claim was extinguished when James McKenzie failed to assert his claim during his lifetime. Neither Olivia McKenzie nor anyone else can now assert a claim. This disability transcends a mere question of standing.
[3] The statute authorizing her recovery of her husband's unfiled-for permanent partial disability benefits as death benefits is the "ancestor" of sec. 102.47(2), Stats. (1979), not sec. 102.47(1), with which we are here concerned.
[4] We do not re-examine Milwaukee to determine that its holding is presently a valid one. We merely examine the meaning of its language as written by this court in 1924.
[5] The following jurisdictions have held that, under their statutes, a surviving spouse has no right to claim a deceased employee's disability benefits: Dick v. Industrial Comm., 197 Colo. 71, 589 P.2d 950 (1979); Owens v. Ward, 271 So. 2d 251 (Ala. Civil App. 1972); Scheeler v. North Pine Electric Cooperative, Inc., 276 N.W.2d 648 (Minn. 1979). The Alabama court in Owens stated at page 254: "Whether such restriction [on dependent's rights to file a claim] is fair and just to the ... dependents of workmen who delayed action . . . is a matter for the legislative conscience." Subsequent to the holding of the Minnesota court in Scheeler, the Minnesota legislature amended that state's worker's compensation law to allow the filing of a McKenzie-type claim.

Moore v. Chrysler Corp., 233 A.2d 53 (Del. 1967), and Wilson-Raymond Constructors Co. v. Industrial Comm., 79 Ill. 2d 45, 37 Ill. Dec. 582, 402 N.E.2d 584 (1980), permit the surviving spouse to recover the disability payments that have been awarded during the deceased worker's lifetime.
The following have permitted the surviving spouse, under specific provisions of the jurisdictions' statutes, to file for the deceased's compensation payments: Snyder Construction Co. v. Thompson, 145 Ind. App. 73, 248 N.E.2d 560 (1969); Frederico Granero Co. v. Workmen's Compensation Appeal Board, 269 Pa. Super. 340, 409 A.2d 1187 (Pa. Commonw. 1980); Kozielec v. Mack Mfg. Corp., 29 N.J. Super. 272, 102 A.2d 404 (1953). In each of these cases, the compensation statutes directly supported the right of the dependent to file a post-mortem claim.